United States District Court
District Of Connecticut

FILED

2005 NOV 21 P 2: 41

U.S. DISTRICT COURT

| | |
|---|---|
| Duane Ziemba | Civil Action No. |
| | 3:02 cv 258 (DFM) |
| vs. | |
| Lynn Milling, et al. | November 17, 2005 |

Plaintiff's Memorandum Of Law In Support
Of Opposition To Defendants' Motion For
Summary Judgment

## I. Introduction And Facts

This is a §1983 action arising out of the defendants Unconstitutionally subjecting the plaintiff to acts of retaliation, failure to provide proper timely medical care, excessive force, exposing plaintiff to bitterly cold temperatures, Stealing of legal material and the denial of access to the Courts.

## II. Legal Standard Of Summary Judgment

In a motion for Summary judgment, the burden is on the moving party to establish that there are no

3

genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (c) ; Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L.Ed 202, 106 S. Ct. 2505 (1986); White V. ABCO Engineering Corp., 221 F. 3d 293, 300 (2d Cir. 2000).     The burden of showing that no genuine factual disputes exists rests upon the moving party. Carlton V. Mystic Transp., Inc., 202 F. 3d 129, 133 (2d Cir. 2000).

The evidence of the party opposing summary judgment is "to be believed, and all justifiable inferences are to drawn in [that party's] favor." Id. at 255. Moreover, the pleadings of a pro se plaintiff must be read liberally and should be interpreted "to raise the strongest arguments that they suggest." Burgos V. Hopkins, 14 F. 3d 787, 790 (2d Cir. 1994). In applying this standard, the Court should not weigh evidence or assess the credibility of witnesses. United States V. Rem, 38 F. 3d 634, 644 (2d Cir. 1994). These determinations are within the sole province of the jury. Azrielli V. Cohen Law Offices, 21 F. 3d 512, 517 (2d Cir. 1994).

4

A. Plaintiff's Factual Opposition Summary Judgment
   Presentation

Chronologically the Defendants' Motion and the
Plaintiff's Second Amended Complaint is addressed.

1. Retaliatory Transfer

The defendants argue that "the plaintiff has been
a management problem." Defs'. Mem. 9. And, "the
transfer of the plaintiff was not to retaliate
against him for any exercise of any First
Amendment rights." Defs'. Mem. 16-32. The defendants
are mistaken, and heavy emphasis is directed to
the defendants' motion is replete with intentional
factual misrepresentations and contentions that
lack any support in the record.

**A** Supervisory official defendant may be personally
involved in a Section 1983 violation in the following
ways: (1) the defendant participated directly in
the alleged constitutional violation; (2) the defendant
after being informed of the violation through a
report or appeal, failed to remedy the wrong;
(3) the defendant created a policy or custom
under which unconstitutional practices occurred, or

5

allowed the continuance of such a policy or custom;
(4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts; or
(5) the defendant exhibited deliberate indifference to
the rights of inmates by failing to act on information
indicating that Unconstitutional acts were occurring.
Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Williams
V. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

  The truth reveals that the plaintiff has never been
a management problem for the Department of Correction
prison officials. The facts and evidence prove,
overwhelmingly, that it is the defendants and their
fellow employees who have created the numerous
incidents through their malicious abuse to the plaintiff,
retaliation, and notorious gross corruption. The
plaintiff's actions thereto were at all times reasonable
and justified under the horrific circumstances.
See Plaintiff's Aff. at 1. (emphasis added).

        With respect for this honorable Court and
        Counsel for the defendants, the plaintiff
        shall avoid being burdensome by the
        (total) repetition herein this Memorandum
        of the facts set forth in the Plaintiff's
        Aff. and referenced Exhibits. I.d.

6                    -4-

"<u>Facts Which Lead Up To This Lawsuit And</u>
<u>Defendant Armstrong's Personal Involvement.</u>" 2nd Amd.
Com. page 4.

"The Northern prison officials committed numerous,
serious unconstitutional violations against the plaintiff.
They used excessive force on him, they violently
assaulted him on video, denied him medical care,"
inter alia.  2nd Amd. Com. paragraph 14.

These are genuine issues of material fact
substantiated by the submitted evidence
in Exhibits E and I.

Incredibly, despite defendant Armstrong's security
Division's findings (See Exhibit E) concerning Captain
Margiafico stricking the plaintiff in the face and the
neglect of the medical staff, despite the totally
unjustified length of the restraint, and despite the
failure of the remaining staff members to tell the
truth about the violent excessive force and
plaintiff's injuries, no one was disciplined for using
excessive force, no one was disciplined for
violating the Department's truthfulness directives, and
no one was disciplined for denying the plaintiff
needed medical care and physically torturing him.
Defendant Armstrong (responsible supervisory official),
shockingly rejected all of his own investigator's

7                          -5-

findings. See Exhibit I.

Only Captain Mangiafico received discipline of any Kind; he was found guilty of "failure to supervise" and was suspended for five days — described by Armstrong as the "least/lowest level of discipline." See Exhibit E, Security Division Routing Form. Defendant Armstrong was responsible for this utter lack of meaningful discipline. The indisputable and indeed genuine issues of material fact, prove that defendant Armstrong as the Commissioner, established a culture (policy and custom—Id. See cases cited) of abuse to inmates [Plaintiff], and gross corruption within the DOC. Where Unconstitutional conduct was a custom that was completely acceptable, and even rewarded. Please See Exhibits A, E-I.

"They maliciously, additionally, tampered with the plaintiff's food attempting to murder him." and Amd. Com. 14. These are genuine issues of material fact substantiated by the Submitted evidence in Exhibit D. Defendant Armstrong, was also informed of this incident and the only action he took was to ostentatiously respond. See Exhibit D, and Plaintiff's Aff. at 3. Defendant Armstrong in unlawful "damage control" failed and refused to have this "attempted murder" investigated, and failed to take

disciplinary action against the evildoers.
Which is not really surprising when considering the
facts of Armstrong is responsible for the killing of
several inmates and that he had the well
established _culture_ -- policy and custom -- of abuse
to inmates and gross corruption. See Exhibit A.
(emphasis added).

"They terrorized the plaintiff and in fact committed
very serious crimes against him, acts of shocking
retaliation and truly horrific and enormous
Constitutional violations." 2 Amd. Com. 14.
              To substantiate these material facts, please
              see the submitted evidence at Exhibits
              A, B, C, D, E, G and I, and Plaintiff's entire
              Aff. and the referenced Exhibits.

"The plaintiff commenced the following lawsuits:
Ziemba V. Armstrong, 3:98 cv 2344, filed December 2, 1998,
Ziemba V. Turner, 3:99 cv 306, filed February 19, 1999,
Ziemba V. Myers, 3:99 cv 2246, filed November 17, 1999."
2nd Amd. Com. 14.        To substantiate these material
facts, please see the submitted evidence at
Exhibit H.

    Id. "In the Northern lawsuit 3:98 cv 2344, it's
notoriously well known, that due to the plaintiff filed

complaints and had the CT. State Police go into Northern, he had Captain Mangiafico suspended, with disciplinary action taken against him, and reassigned out of Northern." 2nd Amd. Com. 15. Substantiating these facts is Exhibits E-I, and Plaintiff's Aff. at 3.

"Due to these facts, the Northern prison officials became extremely hostile towards the plaintiff and inflicted non-stop acts of retaliation." 2nd Amd. Com. 16. To substantiate this, please see Plaintiff's entire affidavit and referenced Exhibits of evidence.

"In 1998 and 1999, the Northern prison officials repeatedly threatened and terrorized the plaintiff. They stated that because of his filing lawsuits and complaints, that Commissioner Armstrong (Defendant) has put him on the list, has promised that he will be sorry, that he is being transferred out of state where he will be killed. (See 2nd Amd. Com. 21). The plaintiff was so terrified he wrote to the CT. State Police and filed a complaint against Commissioner John Armstrong through his agents threatened to transfer him out of state and have him killed." 2nd Amd. Com. 21.

Substantiating these material facts is Plaintiff's Aff. at 8.

"The plaintiff also put these facts on record in

-8-

10

the Northern lawsuit, 3:98 cv 2344. In interrogatories filed on defendant Armstrong dated November 12, 1999. Defendant Armstrong read these interrogatories and he signed them under oath. Which confirms that he was fully informed of the threats and terrorism and retaliation by his agents against the plaintiff. Not only did he failed to remedy the wrong but he personally approved and promoted the serious retaliation and terrorism against the plaintiff." 2nd Amd. Com. 22.

To substantiate these material facts the plaintiff has submitted the interrogatories – Exhibit J, and Plaintiff's Aff. at 8.    These genuine material issues of fact prove, three (3) months before the plaintiff was transferred out-of-state he served a set of Interrogatories on defendant Armstrong dated November 12, 1999 (in civil action No. 3:98 cv 2344 (JCH) (HBF) ) – and he stated the following : "1. Recently and repeatedly prison officials have threatened the plaintiff stating that he is on the list, that he will be on the bus, that he is going to be sorry, that they kill people like him down there, that he

is going to Virginia's Supermax prison. Defendant Armstrong is it true that in vengeful retaliation because of the plaintiff's litigation, you or your agents are transferring the plaintiff out of State, to the State of Virginia or to any other State?"

This Should be the end of this matter. The defendants' motion is improper because, the defendants insist that the Court resolve genuine material issues of fact in their favor, and the Court has no jurisdiction to do that. Moreover: this should be the end of this "retaliatory transfer" matter, the defendants' motion, as a matter of law, should be denied — — because these material issues of fact show that long before the plaintiff was even transferred out-of-state defendant Armstrong's subordinates threatened plaintiff that in "vengeful retaliation" he is being transferred out of State. But there is more, as is further advanced herein, it is unconscionable for the defendants

12

and their government counsel to tell this Court that there is no dispute about the "retaliatory transfer".

"Defendants Armstrong, Milling and Levesque, In Sole Retaliation they each knowingly in retaliation planned, ordered and carried out transferring the plaintiff out of the CT. D.O.C. to Nevada on January 20, 2000." 2nd Amd. Com. 23.

"Due to the plaintiff exercising his Constitutionally protected First Amendment rights, as described herein, by filing lawsuits, grievances, complaints and letters, In Sole Retaliation defendants Armstrong, Milling and Levesque had the plaintiff transferred out of the CT. D.O.C. and to Nevada." 2nd Amd. Com. 24.

"The facts in paragraph 21, are given great emphasis. That before the plaintiff was even transferred out of state to Nevada, defendant Armstrong directly through his agents, he threatened the plaintiff, that because of his filing lawsuits and complaints (In Retaliation) "he is on the list, promises that he will be sorry, that he is being transferred out of state where he will be killed" 2nd Amd. Com. 25.

"Through numerous letters, grievances, and request forms, the plaintiff after being transferred to Nevada, he informed defendants Armstrong, Milling and Levesque of how his transfer out of CT. to Nevada

13                          —11—

was in retaliation. And the plaintiff requested for each one of these defendants to stop the serious retaliation against him. Each defendant, as the supervisory officials, failed to remedy the wrong and exhibited deliberate indifference to the rights of the plaintiff." 2nd Amd. Com. 26.

"Prison Officials may not transfer an inmate in retaliation for the exercise of Constitutionally protected rights ..." <u>Davis V. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1989).

The defendants have insinuated in their moving papers, that plaintiff was better off "remaining in Nevada and away from the Northern correctional officials he claims treated him in some vague fashion that was Unconstitutional." Defs'. Mem. at 4.   First, the plaintiff's claims cannot be considered "vague" to a competent person -- or this honorable Court.   And Second, the defendants in this lawsuit had the responsibility, authority and obligation to take action to stop their Northern Subordinates Unconstitutional conduct (but they intentionally failed to), what they did

14

not have the lawful authority to do was transfer the plaintiff in retaliation. It is well established that it is constitutionally unacceptable to transfer a prisoner in retaliation -- as is exactly the case herein this §1983 action.

The defendant have overtly lied to this court. By falsely alleging that "on March 31, 1999, that the plaintiff had no pending litigation against the State at that time." See Defs'. Mem. at 12-13. It is a blatant lie by the defendants that on March 31, 1999, plaintiff had no pending litigation against the State. See the print out from the Pacer Center - Exhibit H. Which shows the following pending litigation by the plaintiff:
3:98 cv 2344 - Ziemba v. Armstrong - filed 12/02/98 ;
3:98 cv 02370 - Ziemba v. Wezner - filed 12/7/98 ; and
3:99 cv 00306 - Ziemba v. Turner - filed 2/19/99.

The defendants' guilt is immeasurable. As indicated above, the genuine material issues of fact preclude the defendants Summary judgment. Not only are the defendants Not entitled to judgment, but the defendants should be sanctioned

15

for intentionally and repeatedly (Blatantly Lying) misrepresenting the facts.

The defendants <u>Did Not</u> present any argument pertaining to "due to the plaintiff exercising his Constitutionally protected First Amendment rights ..., by filing grievances, complaints and letters, <u>In Sole Retaliation</u> defendants Armstrong, Milling and Levesque had the plaintiff transferred to Nevada." See 2nd Amd. Com. at 24. Moreover: the defendants did not present an argument with respect to the above. Indeed, the defendants' entire argument is their blatant lie that; "plaintiff had no pending litigation against the State." Id.   Accordingly, this Court does not need to address these facts and they must go to trial. <u>See</u>, <u>e.g.</u>, <u>Keeney V. Estate Of Nolan</u>, 196 F. Supp. 2d 190, 199 (D.Conn. 2002) (JCH) (The defendants "did not present an argument that they were entitled to qualified immunity for striking [plaintiff] in the head and face. Accordingly, the court does not address whether qualified immunity applies to that conduct.").   <u>See also Whelan V. Abell</u>, 310 U.S. App. D.C. 396, 48 F. 3d 1247, 1251 (D.C. Cir. 1995) ; <u>Kattan V. District Of Columbia</u>, 301 U.S. App. D.C. 374, 995

16                           -14-

F.2d 274, 995 U.S. 1018, 128 L Ed. 2d 71, 114 S. Ct. 1398 (1994).

Even if the defendants did (but they did not) present an argument hereto the plaintiff filing: grievances, complaints and letters; even if this defense and argument was properly before this Court (but it is not), the plaintiff nevertheless fully substantiates these facts by submitting to this honorable Court Exhibits B, C, D, G, J-K, and See Plaintiff's Aff. at 3, 4, 5, 7, 8 and 9.

<u>Retaliation Is Unconstitutional -- See:</u>

<u>Thaddeus-X V. Blatter</u>, 110 F. 3d 1233 (6th Cir. 1997) Retaliation against inmate for exercising his or her Constitutional rights is itself a violation of Constitution.

Retaliation intent can be inferred by circumstantial evidence, including a chronology suggesting retaliation. <u>Shabazz V. Cole</u>, 69 F. Supp. 2d 177 (D. Mass. 1999). Please See Plaintiff's Aff. and referenced Exhibits.

"A claim for relief may be stated under Section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of Constitutionally protected rights." <u>Gill V. Mooney</u>, 824 F. 2d at 194; <u>accord</u>, e.g., <u>Davis V. Kelly</u>, 160 F. 3d 917, 920 (2d Cir. 1998) ("prison autorities may not transfer an inmate in retaliation for the exercise of Constitutionally protected rights"). <u>Graham V. Henderson</u>, 89 F. 3d 75, 80 (2d Cir. 1996) ("retaliation

17

against a prisoner for pursuing a grievance violates the right to petition government for redress of grievance guaranteed by the First and Fourteenth Amendments and is actionable under § 1983"); Colon V. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a right of access to the Courts and to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); Franco V. Kelly, 854 F.2d 584 F.2d 584, 590 (2d Cir. 1988) ("An act in retaliation for the exercise of a Constitutional right is actionable under Section 1983 even if the act, [20] when taken for a different reason, would have been proper.").

Meriwether V. Coughlin, 879 F.2d 1037, 1045-46 (2d Cir. 1989) ("Although prison officials have broad discretion to transfer prisoners ..... they may not, however, transfer them solely in retaliation for the exercise of Constitutional rights."); Morello V. James, 810 F.2d 344, 347 (2d Cir. 1987). The right to petition government for redress of grievances in both judicial and administrative forums -- "'is among the most precious of the liberties safeguarded by the Bill of Rights.'" Id. (quoting United Mine Workers V. Illinois State Bar Ass'n, 389 U.S. 217, 222, 19 L.Ed. 2d 426, 88 S.Ct. 353 (1967)).

18

The defendants' patently frivolous motion makes clear that they are not willing to accept responsibility for their clear Unconstitutional conduct, and are not even willing to accept the Substantiated facts established by the plaintiff and their own documents, and responses. The defendants present the Classic: "We didn't do it" defense.    And, they have even went so far as to allege it was and is all the fault of Some mysteriously named person "Coyle", who they allege was a "Deputy Commissioner". Please See Defs'. Mem. at 12-13.    This transparent defense has absolutely no merit for the following reasons:

Clearly there is a dispute about the defendants Armstrong, Milling and Levesque's personal involvement, participation, awareness and authorization. Id. Defendant Armstrong admittedly was the Commissioner at all times relevant. See Defs'. Ans. 4-7.    Defendant Armstrong, as such, was mandated by statute to establish, develop and maintain "training and development Services" at the DOC. Conn. Gen. Stat. § 18-81.    He was a cabinet-level state official, responsible to the State Chief Executive, the Governor of Connecticut. He

was responsible for the administration of this States Correctional System, the care and custody of persons incarcerated by the Department, and the hiring, supervision, training, discipline and control of persons working for the Department. The codification, distribution and enforcement of Department policies, practices and Directives.

Defendant Milling, also faces supevisory liability in this case. <u>Admittedly</u>, she was responsible for managing the Department's statutory and contractual roles in the Interstate and New England Compacts, with duties that included reviewing and processing inmate custody transfers into and out of the state, liaison, coordinating with CT. Doc facility staff reletive to transfer process. Assist the Director of Offender Classification and Population Management (Defendant Levesque).
See Exhibit Y, Milling's responses to Interrogatories.

And, the truth about defendant Levesque's involvement, participation, awareness and authorization is equally subject to genuine

20

dispute. Defendant Levesque was, also, the responsible supervisory official. Admittedly, he was the Director of Offender Classification and Population Management, as such he was responsible for overseeing and coordinating the entire Doc inmate classification system, and Interstate Compact. See Exhibit X, Levesque's responses to Interrogatories.

To obtain summary judgment in this case, it is not enough for the defendants to attempt to shift the blame and responsibility to some mysterious person named Coyle. Defendants Armstrong, Milling and Levesque - Unequivocally - are liable for the "retaliatory" transfer of the plaintiff to Nevada, inter alia, failure to remedy the wrong. Please See Exhibit O, Grievance filed by the plaintiff dated October 2, 2000 (from Nevada), which specifically addressed the "retaliatory transfer." Defendant Milling was the level 1 reviewer who acted on it, and defendant Levesque was the level 2 reviewer who acted on it. Both failed to remedy the wrong.

In addition: See Exhibit P, Grievance filed by the plaintiff dated October 18, 2000, regarding the "retaliatory malicious transfer." The defendants failed and

21                                -19-

refused to act on this level 1, 2 and 3 grievance. Defendant Armstrong unlawful stole this grievance. Via letters (12 of them) dated June 22, July 5, 16, 22, August 3, 13, 24, 30, September 16, 2001, and January 9, April 24, and July 20, 2002 — — the plaintiff specifically addressed these facts to defendant Armstong. See Exhibit P.   Clearly Armstrong was responsible for the violation (retaliatory transfer), and even after being repeatedly placed on actual and constructive notice of the violation, he failed to remedy the wrong, exactly as defendants Milling and Levesque also did do and failed to do.

Another example - genuine material issues of fact - please see Exhibit Q, the plaintiff filed yet another Grievance on the "Issue: The Unconstitutional violation actively continuing/now two years later Commissioner Armstrong, Tokars, Milling, Levesque in retaliation refuse to transfer me back to the CT. D.O.C. ...." Supervisory liability may be imposed when an official has actual or constructive notice of Unconstitutional practices and demonstrates "gross negligence" or "deliberate indifference" by failing to act. McCann v. Coughlin, 698 F. 2d 112, 125 (2d Cir. 1983). See also Meriweather v. Coughlin, 879 F. 2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of Unconstitutional practices and demonstrates

22

'gross negligence' or 'deliberate indifference' by failing to act.") ; <u>Provost V. City of Newburgh</u>, 262 F.3d 146, 156 (2d Cir. 2001) (Supervisor may be found "grossly negligent" or "deliberately indifferent" if he "knew or should have known" of the underlying facts) ; <u>Rodriguez V. State of Connecticut</u>, 169 F. Supp. 2d 39, 44-45 (D. Conn. 2001) (JCH) : Ruling on Defendants' Motion for judgment on the Pleadings [DKT. No. 193] (May 8, 2003) at 14-15.

Personal involvement will be found where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint. <u>See</u> e.g. <u>Ramons V. Artuz</u>, 2001 U.S. Dist. LEXIS 10327, 2001 WL 840131, at *8 - *10 (S.D.N.Y. July 25, 2001) (personal [*364] liability where prison official "sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff") ; cf. <u>Johnson V. Bendheim</u>, 2001 U.S. Dist. LEXIS 9679, 2001 WL 799569, at *6 (S.D.N.Y. July 13, 2001) (motion to dismiss denied as to prison official who received prisoners' grievances and denied them) ; <u>Van Pelt V. Finn</u>, 1993 U.S. Dist. LEXIS 15951, 1993 WL 465297, at *6 (S.D.N.Y. Nov. 12, 1993) [**27] (prison official demonstrated personal involvement when he reviewed plaintiff's grievances).

Finally, the defendants' extraordinary assertion that the plaintiff was "a management problem and a threat to the safety and security of CT. prisons", and therefore had to be transferred out-of-state, is -- a complete absurdity and sham of a defense.

Please see Exhibit OO, the plaintiff's witness herein this case inmate Angel Caballero #214362, under oath states the following facts: He has been "incarcerated within the CT. Department of Correction for over 10 years. As the attached documents support (see Exhibit OO) during this time he has been a serious safety and security threat to the CT. prison officials and other inmates, but he has **never** been transferred out-of-state due to being a safety or security threat." Exhibit OO, at #3. (Plaintiff a non-violent offender who has never harmed any staff or inmates but was [in retaliation] transferred out-of-state, and defendants alleging it was not in retaliation but for safety due to he was management problem is an absurdity and sham -- Witness Caballero proves.)

Witness Caballero further states ; "He has personal knowledge that there is in fact a **overwhelming** number of other inmates who are a serious safety and security threat to the C.T. prison officials and inmates due to their assaults on staff and inmates, escape attempts, murder and extreme violence, but they have also **not** been transferred out-of-state". Exhibit OO, at #4.

: Witness Caballero #214362, has attached the following evidence to his affidavit: His DR from 3/7/94 for Contraband (Weapon) — involving him (Caballero) coming "out of the cell with shanks in hand." See Exhibit OO.

: His DR from 4/19/95 for Assault on DOC Employee— involving him (Caballero) "charged towards this LT. punching and kicking at staff ..., during the above incident inmate Caballero struck officer Miani in the nose with his fist." See Exhibit OO.

: His DR from 9/13/95 for Assault on DOC Employee — involving him (Caballero) "struck

25

this officer about the head and bit this officer on the forearm. See Exhibit OO.

: His DR from 1/23/96 for Assault on DOC – involving him (Caballero) "took a overhand punch to the face and nose area of Officer  Conloque, cutting his face very badly". See Exhibit OO.

: His DR from 1/23/96 for Assault on DOC – involving him (Caballero) , "Officer Bronx was struck by inmate Caballero numerous times in the head, face, and arms". See Exhibit OO.

: His DR from 12/9/98 for Contraband Dangerous Instrument (Shank) – involving him (Caballero) "Stabbed" inmate Witchord #134630 with a "Shank". See Exhibit OO.

: His DR from 12/11/98 for Security Risk – involving him (Caballero) "Stabbed" several times inmate Spurgim #134630, with "a 10" Shank". See Exhibit OO.

: His DR from 3/17/99 for Assault – involving him (Caballero) "assaulted I/m Diaz #29889, before

26