dropping to his knees and grabbing I/M Diaz around his head and neck ..., I/M Caballero make several slashing motions with his right hand to I/M Diaz's face and neck area". Requiring outside med. care, 82 stitches. See Exhibit OO.

- His DR from 2/26/02 for Assault — involving him (Caballero) "repeatedly throwing blows and landing them, to the head and face of I/M Geraci." See Exhibit OO.

- His DR from 1/27/03 for Fighting — involving him (Caballero) "engaged in a fight". See Exhibit OO.

- His DR from 9/25/03 for Contraband (Dangerous Instrument) — involving him (Caballero) having "several weapons", "3 pieces of 1/2 inch wide metal, approx. 8 inches long w/2 Razors". See photos of weapons. Exhibit OO.

- His criminal charges, Arrest Warrant's, Mittimus showing added sentence of 3 years and 3 years, DOC Restrictive Status Report, etc. are all attached documents of evidence. See Exhibit OO.

27                    -25-

∴ He also attached as evidence a letter by Warden Choinski dated 9/30/03, to [defendant] Levesque. With enclosed high security package on I/M Caballero ; "Based on the very serious nature of his SRGSTM Latin King activity and history, inmate Caballero possesses a very serious threat to the safety and security of this facility and to the Department of Correction and we are recommending High Security placement."

(An out-of-state transfer was **NOT** even recommended or considered for I/M Caballero, a very—very dangerous man who possessed "a very serious threat to the safety and security of CT.'s DOC." (emphasis added).

Thus - proving that in this case the plaintiff who is a non-violent offender, who **never** harmed any DOC staff or inmates, was in Sole retaliation transferred out-of-state, and defendants alleging it was not in retaliation but was for safety reasons -- is an absurdity and a Sham.)

Moreover : given this overwhelming record to the

28

contrary of the defendants' extraordinary assertions, it is unconscionable for the defendants and their government counsel to tell this Court that it was not a retaliatory transfer, when the genuine material issues of fact substantiate the transfer was indeed in retaliation due to the plaintiff exercising his constitutionally protected rights. Id. Plainly, there are genuine disputes about the facts relevant to the retaliatory transfer and the defendants' culpability.

2. <u>Facts Of Denial Of Medical Care - 2nd Amd. Com. page 10.</u>

Defendant Milling sent a Memorandum to defendant Myers dated January 13, 2000. Which stated : "Please make the necessary notifications regarding this matter including conferring with medical staff. If there are any medical issues, which would preclude his transfer at this time, notify my office." Pl. Amd. Com. 27.  Defs'. Admitted above, See Defs'. Ans. 27.

Defendant Myers with deliberate indifference failed to act on this Memorandum - actual and constructive notice.   January 13 this Notice (Memorandum) was issued to Myers, and January 20, 2000 plaintiff was transferred out-of-State to Nevada. Myers failed, utterly and with deliberate indifference to act on

29

this said Memorandum. He did not "make the necessary notifications", and did not see "if there were any medical issues precluding his transfer". Because no medical staff even seen or examined the plaintiff between these essential dates. See Med. Records at Defs'. Exs. T-U.

Before the plaintiff was transferred out of state on 1/20/02, he had numerous med. requests submitted to defendant Wollenhaupt. And emergency grievance that was filed on 1/10/02 - IGP No. 141-00-019. Defendant Wollenhaupt acted with deliberate indifference to the plaintiff's serious medical needs, she completely failed to provide the plaintiff medical care for his seriously injured back. She intentionally failed to act on the plaintiff's numerous medical requests and emergency grievance. 2nd Amd. Com. 30. To substantiate these facts the plaintiff has submitted the "emergency grievance" - See Exhibit L., and Plaintiff's Aff. at 27 and 28. Moreover: No medical staff even saw or examined plaintiff before he was transferred out of state on 1/20/02. See Defs'. Exs. T-U. Furthermore, defendant Wollenhaupt acted on the said emergency grievance and Rejected it. She admits to receiving it on 1/11/00 and "Rejecting" it on 1/11/00. See Exhibit L, Wollenhaupt's responses to Interrogatories at 5 and 6. What is really

30                          -28-

important in this case is the plaintiff at Interrogatory No. 7, asked defendant Wollenhaupt (See Exhibit L) the following: "Attachment A, grievance No. 141-00-191. Plaintiff filed this Health Emergency Grievance on 1/10/00 and stated he has back injury, in severe pain. State in detail why no medical staff even saw the plaintiff with respect to this emergency grievance?"

Wollenhaupt responded: "There is no response to this question as the plaintiff was seen." We know that this is a perjured response. Because the plaintiff was not ever seen in response to this emergency grievance, or at any time whatsoever between the filing of this grievance and his transfer to Nevada on 1/20/00. See Defs'. Exs. T-U. The record makes clear that defendants Armstrong (See 2nd Amd. Com. at 31., and Plaintiff's entire Aff. and referenced Exhibits), Myers and Wollenhaupt had the responsibility, opportunity, and obligation to provide, or to ensure the provisions of constitutionally adequate medical care to the plaintiff, but they each deliberately failed and refused to do so. Id. See cited cases.

The defendant's deliberate indifference resulted in the plaintiff being completely denied medical care for his seriously injured back, before his transfer to NV. Causing plaintiff's back to be further injured during

31

transport and inflicted severe pain and suffering.
and Amd. Com. 32.

> Deliberate indifference will be found where
> "the medical attention rendered [was] so
> woefully inadequate as to amount to no
> treatment at all". <u>Westlake v. Lucas</u>, 537 F.2d
> 857, 860 n.5 (6th Cir.1976) [**15] (citation omitted).

The fact that the plaintiff received some medical care does not preclude a finding of deliberate indifference where the "course of treatment was largely ineffective and [the defendants] declined to do anything more to attempt to improve [the plaintiff's] situation". Hathaway I, 37 F.3d at 68; See also Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir.1970) (per curiam) ("Prison officials and medical officers have wide discretion in treating prisoners", but may be liable where the treatment provided was "so cursory as to amount to no treatment at all.").

> Id. In this case the defendants failed
> to even see, or examine the plaintiff,
> failed to prescribe pain medication,
> and deliberately did not act on his
> numerous requests submitted, and the
> emergency grievance.  As a defense
> the defendants have tried to
> hopefully Strangle the judge with red

32                              -30-

herrings -- the plaintiff's entire
medical history. Which is not relevant
hereto this case - the specific claims
and essential time frames. Id.

3. <u>Facts Of Excessive Use Of Force, Denial Of
Medical Care And Exposure To Bitterly Cold - 2nd</u>
Amd. Com. page 13.

<u>Excessive Force :</u>  The plaintiff had two (2)
affidavits by Northern inmates, who witnessed the
intentional, malicious, retaliatory excessive force.
These two (2) affidavits were stolen in September
and November 2004 by DOC officials. Id.
Notwithstanding these two (2) affidavits being stolen,
the defendants Davis, Matos and Bosquet are
still not entitled to summary judgment.
To substantiate that these defendants' utilized
excessive force against the plaintiff, please see
the submitted affidavit by the plaintiff, at 29., and
facts in the 2nd Amd. Com. at 34, 35, 37-38. And
see Exhibit M and N. (emphasis added).
   The defendants' demonstrably patently frivolous
defense to the "Excessive Force", is disturbingly
solely one (1) page of meaningless, appalling
and pathetically insignificant argument. Id.
See Defs'. Mem. 41.    Moreover, in this motion

33

for summary judgment, the burden is on the moving party, the defendants in this case, to establish that there are no genuine issues of material fact in dispute. Id. cases cited. Clearly the defendants have failed to meet this burden. Notwithstanding the defendants' burden, as a matter of law, they have failed to submit any evidence whatsoever to establish that the facts of excessive force herein this §1983 action are not in dispute. Notwithstanding the specific facts against defendants Davis, Matos and Bosquet utilizing excessive force against the plaintiff, not one of these three named defendants have even bothered to submit an affidavit to this Court in order to refute these facts. This should be the end of this matter, because as a matter of law the defendants' have failed to meet their burden, and therefore they are not etitled to judgment.    However, the plaintiff has went a step further by submitting evidence substantiating these facts, please see Plaintiff's Aff. at 29.    Accordingly, the defendants are not entitled to summary judgment with respect to the undisputed facts of excessive force.    Id. See Exhibits M and N,

34

4. <u>Denial of Medical Care</u>:  The plaintiff had two (2) affidavits by Northern inmates, who witnessed defendants Davis, Matos and Bosquet intentionally deny the plaintiff needed medical care, by failing to summon medical staff. These two (2) affidavits were stolen in September and November 2004 by DOC officials. Id.
Notwithstanding these two (2) essential affidavits being stolen, the defendants are still not entitled to summary judgment.

Defendants Davis, Matos and Bosquet each acted with deliberate indifference to the plaintiff's serious medical needs. They each intentionally ignored the plaintiff's request for them to call medical and have medical see him, because his back is seriously injured. See 2nd Amd. Com. at 36.
The defendants Did Not present any argument pertaining to this denial of medical care claim.  Therefore, this court does not need to address these facts and they must go to trial. Id. cases cited.

5. <u>And Exposure To Bitterly Cold</u>:  Substantiating these facts in the 2nd Amd. Com. at 39, the plaintiff submits Exhibit N, and See Plaintiff's

Aff. at 30. Notwithstanding the defendants burden of establishing that there are no genuine issues of material fact in dispute, Id., they have failed again to meet their burden with respect to these facts of maliciously exposing the plaintiff to bitterly cold. Once again, these three named defendants could not be bothered to, and have utterly failed to submit to this court even one affidavit to support their motion, or even one affidavit to refute these facts. Accordingly, the defendants are not entitled to judgment.

Finally, the defendants take issue with these facts by alleging the plaintiff "never grieved" them. Defs. Mem. 2z-42. The defendants are mistaken. Please see Exhibit N, the plaintiff did exhaust his Administrative Remedies as were available with respect hereto. Indeed, even the docket sheet in this case reflects that in December 2002, the plaintiff filed a Notice with the court, with the attached evidence of exhaustion of his administrative remedies to every claim herein this § 1983 action. See doc. # 20. Moreover, the defendants are not entitled to summary judgment.

36

6. <u>Facts Of Stolen And Denied Legal Material</u>
   <u>And Denied Access To CT. Courts – 2nd Amd.</u>
   <u>Com. 40 through 48.</u>

   First, the defendants argue that "the Affidavit
of Milling makes clear that neither she nor any
of the other defendants had anything to do
with packing the plaintiff's property." Defs.
Mem. 42.   Once again, the defendants have
misrepresented the specific claims herein this
case.  No where is there a claim of these
defendants "packed", or "had anything to do with
packing the plaintiff's property." See 2nd Amd.
Com.

   Second, the defendants argue that "any allegations
regarding missing property cannot sufficiently
be attributed to any of the defendants by
anything other than the plaintiff's broad
conclusory allegations of conspiracies and
surmised involvement.

       The defendants entire defense hereto is
       one very small paragraph. A total of 54
       words. Defs'. Mem. 42. With this patently
       frivolous, pathetically insignificant defense
       the defendants have failed to meet their

37                          −35−

burden to establish that there are no genuine issues of material fact in dispute. The defendants' total of 54 words, is so frivolous as to not even require a response. Notwithstanding these facts, the plaintiff does significantly oppose the defendants frivolous defense.

Third, the defendants argue that the plaintiff's allegations are "broad conclusory allegations". Defs'. Mem. 42. It is a colossal understatement to submit to the wisdom of this honorable Court, that this is the sole systematic frivolous defense which the defendants' have in response to this truly meritorious §1983 action. Indeed, the defendants throughout their Memorandum state the plaintiff's claims are "vaguely", "unspecified", or "broad", or "conclusory" set forth. Over 21 times the defendants' state this. Undoubtedly though, a review of the 2nd Amd. Comp. shows just the opposite. Id.

The Supreme Court has recently articulated that the pleading standard under Rule 8 of the Fed. R. Civ. P. is a liberal one, and that a complaint must include only a "short and plain statement of the claim", and must simply "give the defendants fair notice of what the plaintiff's

claim is and the grounds upon which it rests."
Swierkiewicz V. Soreman N.A., 534 U.S. 506, 513
(2002).          Counsel for the defendants is
urged to read this case.


   Plaintiff's Claims hereto : "The plaintiff from Nevada
immediately Started to write the CT. D.O.C. prison
officials concerning his legal material property."
2nd Amd. Com. 41.   These facts are Substantiated
by Plaintiff's Aff. at 31.


"The plaintiff wrote and Sent numerous letters from
Nevada to defendants Armstrong, Milling and Myers.
He informed each one of these defendants
(Actual and Constructive Notice - Id. cases cited)
that he needs his (five boxes) of legal material
property immediately. And he put each one of
these defendants on Notice, that they better
take action to ensure that their agents do not
Steal or destroy his legal material. These defendants,
as the Supervisory officials, failed to remedy the
wrong and acted with deliberate indifference to
the plaintiff's rights of access to the Courts."
2nd Amd. Com. at 42. These facts are Substantiated
by Plaintiff's Aff. at 31.


39                      - 37 -

"Defendants Armstrong, Milling and Myers intentionally denied the plaintiff all of his legal material property from January 20, 2000 until on or about April 5, 2000. Each one of these defendants knew that the plaintiff was litigating lawsuits against them or their fellow staff. Due to the plaintiff exercising his Constitutionally protected rights of access to the Courts, filing grievances and complaints, these defendants intentionally, in retaliation denied the plaintiff all of his legal material property. In addition, they failed to take any action to stop their agents from stealing plaintiff's legal material." 2nd Amd. Com. 43.  These facts are substantiated by Exhibits R, S and T, and see Plaintiff's Aff. at 31.

"On or about April 5, 2000 the plaintiff received his legal material property that the defendants mailed to him in Nevada. Immediately the plaintiff noticed that a very high amount of his legal material had been stolen. Which only the defendants and their agents could have stolen because the boxes were still sealed from CT., when the Nevada prison officials opened them." 2nd Amd. Com. 44.  These facts are substantiated by Exhibits R, S and T, and See Plaintiff's Aff. at 31

40

"Through numerous letters and grievances, defendants Armstrong, Milling, Levesque and Myers were informed that the plaintiff's legal material property was stolen. Each one of these defendants, as the supervisory officials, they failed to remedy the wrong, by completely failing to take action to have the stolen legal material returned to the plaintiff." 2nd Amd. Com. 45. These facts are substantiated by Exhibits R, S and T, and see Plaintiff's Aff. at 31.

Counsel for the defendants is delusional or (intentionally) incompetent for calling these very serious and specific facts "broad conclusory".

The defendants' frivolous and pathetically insignificant -- only 54 words -- argument to these above set forth facts clearly does not constitute an argument at all, and it's indisputable that the defendants' failed to meet their burden of establishing that there are no genuine issues of material fact in dispute. The defendants Did Not present any argument with respect to these specific facts. Accordingly, this Court does not need to address these

facts and they must go to trial. See, e.g.,
Keeney V. Estate Of Nolan, 196 F.Supp. 2d 190, 199
(D. Conn. 2002) (JCH) ; Whelan V. Abell, 310 U.S. App.
D.C. 396, 48 F.3d 1247, 1251 (D.C. Cir.1995) ; Kattan V.
District Of Columbia, 301 U.S. App. D.C. 374, 995
F.2d 274, 995 U.S. 1018, 128 L.Ed. 2d 71, 114 S.Ct (1994).

   Fourth, the defendants argue in their 54 words
of insignificant defense, "conclusory allegations
of conspiracies". Defs'. Mem. 42. Moreover:
Counsel for the defendants is either very delusional,
incompetent, attempting to deceive this Hon.
Court, or all of the above. Because the
aforementioned record makes clear that the
plaintiff's claims do not include any "conspiracies."

   Fifth and finally, See 2nd Amd. Com. at 46 and
47, the Complaint in great detail States the
"permanent damages" which resulted because of
his legal material being denied to him, Stolen,
and not ever returned. The defendants
 Did Not present any argument Whatsoever
With respect to these facts. Accordingly, this
Court does not need to address these facts
and they too must go to trial. Id. Cases cited.

42                          -40-

## 7. Facts Of Deliberate Indifference To Plaintiff's Safety And Well Being

The defendants argue that there was "no notice to defendants that plaintiff was in danger in Nevada." Defs'. Mem. 43. The defendants are mistaken. Ludicrously, the defendants allege there was no notice, but then themselves admit there was indeed notice, by the "grievance" filed by the plaintiff. See Defs'. Mem. at 43. This is one in the same grievance submitted by plaintiff — Exhibit U.

Finally, the defendants take issue with, "nor was the plaintiff ever harmed in Nevada." Defs'. Mem. 44.    Again, the defendants are mistaken.    Specifically on December 4, 2000, the plaintiff filed a grievance regarding: "Inhuman / Life Threatening / Cruel Conditions," involving the "Nevada guards are gun happy, they shoot inmates for unjust reasons", unlawfully, inter alia. This grievance [Notice] went to defendants Milling, Levesque and Armstrong. Incredibly, on December 29, 2000 it was "denied" and the Level-1 reviewer (Milling) failed to even sign it. See Exhibit U. In addition the plaintiff sent nine (9) letters of notice to

43

these defendants regarding this same grave matter.
See Exhibit U.    Notwithstanding these over Nine
(9) genuine material facts of evidence, the
defendants deliberately failed and refused to
act on this overwhelming actual and constructive
notice.  They took absolutely no action to protect
the plaintiff or to remedy the wrong.
Directly due to these facts; On January 9, 2002 the
plaintiff was shot and seriously injured.
To substantiate these facts, please see Plaintiff's
Aff. at 32, and Exhibit V.


B.  <u>It Is Beyond Cavil That The Defendants</u>
    <u>Are Not Entitled To Qualified Immunity</u>


     The qualified immunity analysis is well-established.
First, the Court must determine whether the facts
alleged, taken in the light most favorable to the
plaintiff, show that the defendants' conduct
violated a constitutional right; Second, if a
violation can be made out, the Court must
ask whether the right was clearly established.
<u>See Saucier V. Katz</u>, 533 U.S. 194, 200-01 (2000);
<u>Ehrlich V. Town of Glastonbury</u>, 348 F. 3d 48,
54-55 (2d Cir. 2003).


     First, the defendants' conduct did violate the

plaintiff's Constitutional rights. For almost 30 years, it has been the well-established law of the land that the government must "provide medical care for those whom it punishing by incarceration", and that "deliberate indifference to a serious medical needs constutes the 'Unnecessary and Wanton infliction of pain' proscribed by the Eighth Amendment." Estelle V. Gamble, 429 U.S. 97, 103 (1976) (citation omitted). Harrison V. Barkley, 219 F.3d 123, 137 (2d Cir. 2000).

With respect to the excessive force; convicted prisoners are protected from misuse of force by the Cruel and Unusual Punishment clause of the Eighth Amendment. Hudson V. McMillian, 503 U.S. 112 S.Ct. 995, 998-99 (1992); Whitley V. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986); Gregg V. Georgia, 428 U.S. 153, 173, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976).

With respect to the retaliation; It is well-established that prisoners enjoy a Constitutional right to access to the Courts. Bounds V. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 72 (1977). It is equally well established that prison officials may not relalate against a prisoner for exercising this right. See Franco V. Kelly, 854 F.2d 584, 589 (2d Cir.1988); Colon V. Coughlin, 58 F.3d

865, 872 (2d Cir. 1995) ; <u>Percell V. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) ; <u>Morello V. James</u>, 810 F.2d 344 (2d Cir. 1987).


<u>Thaddeus-X V. Blatter</u>, 110 F.3d 1233 (6th Cir. 1997) Retaliation against inmate for exercising his or her Constitutional rights is itself a violation of Constitution.

The effect on freedom of speech of retaliation need not be great in order to be actionable. <u>Walker V. Pataro</u>, 2002 U.S. Dist. LEXIS 7057, No. 99 Civ. 4607, 2002 WL 664040, at 9 (S.D.N.Y. Apr. 23, 2002).

<u>Merriwether V. Coughlin</u>, 879 F.2d 1037, 1045 (2d Cir. 1989) (routine administrative decisions taken in retaliation for exercising Constitutional rights Constitutes § 1983 claim.).


<u>Sprouse V. Babcock</u>, 870 F.2d 450 (8th Cir. 1989) (Summary judgment reversed since plaintiff stated a claim of retaliation under § 1983 by alleging that a false disciplinary charge was filed in retaliation for previous filing of inmate grievances).

In this case the substantiated conduct is far more egregious.

46

See <u>Penrod V. Zavaras</u>, 94 F. 3d 1399, 1404 (10th Cir. 1996) [**25] (reversing grant of summary judgment to defendants on inmate's claim that guards conducted harassing cell searches, seized legal materials, refused to provide inmate with hygiene items, and transferred inmate to segregation in retaliation for suit against prison officials).

<u>Zimmerman V. Tribble</u>, 226 F. 3d 568, 573-74 (7th Cir. 2000) (reversing dismissal of claim that prison law librarian repeatedly denied prisoner access to the prison law library in retaliation for protected conduct).

The substatiated retaliatory conduct herein this case is far more egregious. Id.

Retaliation against the exercise of First Amendment rights is itself a violation of the First Amendment. <u>Zilich V. Longo</u>, 34 F. 3d 359, 364 (6th Cir. 1994).

Second, the plaintiff's rights each of them were clearly established. Id. please see cases cited.

47

"This circuit has held that the doctrine of qualified immunity does not shield officials from §1983 liability for engaging in retaliatory conduct in response to an inmate exercise of rights." <u>Lawrance V. Coughlin</u>, 862 F. Supp. 1090, 1098 (S.D.N.Y. 1994).

Wherefore, for all of the reasons advanced herein, and such others the court might discern, the plaintiff entreats this Hon. court to deny the defendants' motion for summary judgment in its entirety.

Respectfully submitted

Duane Ziemba

Duane Ziemba #128963
Garner C.I.
50 Nunnawauk Road
Newtown, CT. 06470

48

<u>Certification</u>

I hereby certify that a copy of the foregoing was mailed to the following on this ~~11~~th *14 th* day of November 2005:

Lynn D. Wittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105


By: Duane Ziemba
    Duane Ziemba