<u>United States District Court</u>
<u>District of Connecticut</u>

FILED
2005 NOV 21 P 2:42
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

Duane Ziemba | Civil Action No.
              | 3:02 cv 258 (DFM)
VS.           |
              |
Lynn Milling, et al. | November 17, 2005

<u>Plaintiff's Local Rule 56 (a) 2 Statement</u>

1. Admitted[1]; but denied that plaintiff being in or out of the DOC is relevant to the subject matter herein this action - or is it relevant to the defendants' Unconstitutional actions of committing worse crimes against the non-violent plaintiff than he is even incarcerated for. Defendants' irrelevant statements are extremely burdensome to this honorable court.

2. Denied. Irrelevant to subject matter of case. Moreover: Burdensome to honorable Court. See Amd. Com.

3. Denied. See Plaintiff's Aff. at 1 through 27.

---

[1] By admitting or denying facts in this Statement, the plaintiff does not concede that the facts are "material" for purposes of the defendants' motion for summary Judgment.

50

4. Denied. Plaintiff's disciplinary history is Unconstitutionally retaliatory, false and is evidence that proves - overwhelmingly - that defendant Armstrong, et al. established within the DOC a culture of abuse and gross corruption. Where Unconstitutional conduct was a custom which was completely acceptable, and even rewarded. See Exhibit A, and Plaintiff's Aff. at 1 through 27.

5. Admitted.

6. Denied. See truth at Exhibit AA.

7. Admitted in damage control plaintiff was unjustifiably transferred to Northern. See Exhibit AA.

8. Denied. See Plaintiff's Aff. at 1 through 27.

9. Denied. See truth - Plaintiff's Aff. at 14.

10. Denied. Plaintiff's criminal charges are not relevant to subject matter of this action. See Amd. Comp.

11. Denied. See plaintiff's Aff. at 1 through 27.

12. Denied. See plaintiff's Aff. at 1 through 27.

51

-2-

13. Denied. See Plaintiff's Aff. at 23, and Exhibit LL.

14. Denied that plaintiff ever slipped restraints. Admitted that with legal justification he popped cuffs.

15. Admitted that plaintiff indeed fought the retaliatory, false and criminally abusive DR charges. Denied he incurred a ticket for Interfering with Safety and Security. See Exhibit MM - ticket is false/retaliatory.

16. Denied. Plaintiff was never a severe or otherwise management problem. See Plaintiff's Aff at 1 through 27 and Exhibits of evidence referenced.
Denied it was Coyle who issued instructions to transfer plaintiff out of state. No such evidence. See Plaintiff's entire Aff. and Amd. Com. at 1 through 25.

17. Denied. There is no evidence that Coyle issued this alleged letter or stated any of this. Moreover: This referenced letter by an alleged Mr. Coyle is not supported by an affidavit by Coyle and could have been created by anyone, at any date. See Defs.' Moving papers.

18. Denied. Defendant Armstrong admittedly was the Commissioner - Supervisory Official. See Defs. Ans. at 4-7.

52                                    -3-

19. Denied. The alleged "instruction" by Coyle is unsupported. Id.

20. Admitted.

21. **Denied.** It is blatant lie that on March 31, 1999, plaintiff had no pending litigation against the state. Please see print out from Pacer Center Exhibit H. Shows plaintiff had following active cases:
3:98 cv 02344 - Ziemba V. Armstrong - filed 12/02/98;
3:98 cv 02370 - Ziemba V. Wezner - filed 12/7/98; and
3:99 cv 00306 - Ziemba V. Turner - filed 2/19/99.

22. Admitted.

23. Admitted only insofar as "four of those cases were brought prior to 2000." Denied that "decision was made to transfer plaintiff long before a single one of his many lawsuits were even served, and could not have been in retaliation for any lawsuit filed by plaintiff." First, See plaintiff's Aff. at 6, 7 and 8 - the defendants unequivocally knew that plaintiff had commenced litigation against them and their fellow DOC employees before they were served. Second, the defendants have intentionally misrepresented the specific claims herein this case as solely retaliation due to plaintiff's lawsuits. Clearly the

-4-

53

Amd. Com. Sets forth the additional claims:
"They Stated that because of his filing lawsuits and complaints." See Amd. Com. at 21.
And; "Due to the plaintiff exercising his Constitutionally protected 1st Amendment rights, as described herein, by filing lawsuits, grievances, complaints and letters." See Amd. Com. at 24.

24. Denied. It is blatant lie that defendant "Milling Sent an email on April 9, 1999, before any lawsuits were Served" [Filed is controlling legal matter]. See Exhibit H, plaintiff had 3 lawsuits officially filed before April 9, 1999.

25. Denied. No evidence whatsoever that it was pursuant to Leveque's instructions. See Defs'. Moving papers.

26. Admitted.

27. Admitted.

28. Admitted that Defendant Milling falsely noted Ziemba's poor institutional history as well as his [fabricated] history of escape attempts.

29. Admitted.

54                              -5-

30. Admitted.

31. Denied. See Exhibit A, the murdering of several inmates by DOC officials, inter alia, the defendants' and their fellow staff's retaliation and horrific abuse substantiates the defendants chronologically set him up to be killed, or gravely injured, by knowingly transferring him to Nevada one of the most dangerous prisons in the country. See Plaintiff's Aff.

32. Admitted that this was written, but denied it constitutes adequate or meaningful medical care herein.

33. Admitted that this was written, but denied it constitutes adequate or meaningful medical care hereto.

34. Admitted.

35. Admitted.

36. Denied. There is no way to know this until trial testimony.

37. Denied. There is no way to know this until trial testimony.

38. Denied. Armstrong admittedly was the Commissioner

55

-6-

and highest ranking supervisory official, see Defs'. Ans. at 4-7. As such, he was responsible for the administration of this State's correctional system, the care and custody of persons incarcerated by the Department, and the hiring, supervision, training, discipline and control of persons working for the Department. Codification, distribution and enforcement of Department policies, practices and Directives. Further denied that plaintiff was ever a safety threat to anyone at any time. See Plaintiff's Aff.

39. Admitted that the CT. DOC, the defendants out right refuse to take any disciplinary action, or other action against their employees unlawful, damaging conduct/behavior to CT. inmates and it is often the case that when the inmate victims' file complaints and/or lawsuits seeking the authority of the Court for justice -- in retaliation the victim is transferred out of State.

40. Denied. See plaintiff's Aff. at 1 through 8.

41. Admitted that the defendants' have the culture of abuse and gross corruption. And they do not take any corrective action, and unlawfulness is even rewarded. Therefore plaintiff's life has been in danger and these state employees have in

56

-7-

fact been responsible for murdering several inmates (men with families who only made a mistake). See Exhibit A.

42. Admitted that the defendants' and their fellow staff are responsible for murdering several men (inmates). See Exhibit A. Admitted that they attempted to murder plaintiff by maliciously tampering with his food. See Plaintiff's Aff. at 3.
Admitted that they have attempted to, also, murder the plaintiff by violently beating him. See Plaintiff's Aff. and referenced Exhibits. And it is admitted that the plaintiff with total justification fears for his life each and every day he remains in these notoriously dangerous — — people's care and custody. Id.

43. Admitted that "milling corresponding with Nevada months before the transfer," does not constitute adequate or meaningful medical care, or sound correctional judgment.

44. Denied. See plaintiff's Aff. at 13-14 and Exhibit BB.

45. Admitted that this was logged, denied it is the conclusion.

57

-8-

46. Admitted.

47. Admitted this is what radiologist concluded, but denied x-ray can always show whether or not there is a significant back injury. See Plaintiff's Aff. at 33.

48. Denied. X-rays do not always show whether or not there is a significant back injury. See Plaintiff's Aff. at 33.

49. Admitted that plaintiff complained about the outrageous number of x-rays taken. And admitted he argued with medical staff due to they were not providing him adequate medical care.

50. Admitted it was noted.

51. Denied. This does not constitute Constitutionally adequate treatment.

52. Admitted.

53. Denied this was adequate or meaningful response, and denied plaintiff ever reported being comfortable after Motrin. See Plaintiff's Aff. at 34.

58

-9-

54. Denied. Defendant Wollenhaupt as the medical supervisory official clearly had the responsibility, authority and obligation to provide the plaintiff adequate medical care. Likewise, defendant Myers was also responsible through the receipt of defendant Milling's letter dated 1/13/02 - Com. at 27-28. And defendants Davis, Matos and Bosquet were responsible as they were told directly by the plaintiff and; "they each ignored my pleas for them to call medical", inter alia. See Amd. Com. at 36-37 and Plaintiff's Aff. at. 28-29.

55. Admitted that there is ample evidence that plaintiff complained about his serious back injury, but denied that Constitutionally adequate medical care was provided.

56. Admitted that this was logged and noted, but denied it's meaningful findings, there is no way to tell whether an examination was actually conducted and, if so, the nature and extent of the examination.

57. Denied. Clearly plaintiff had a serious back injury (See Exhibit BB), which went untreated, and was exacerbated by the on-going malicious abuse. See Plaintiff's entire Aff.

59

-10-

58. Denied. See Exhibits L, M and N.

59. Admitted that plaintiff was trying to heal and not be hurt worse.

60. Admitted that defendant Wollenhaupt failed to take any action to abate the inflicted serious pain and injury to the plaintiff.

61. Denied. Plaintiff never attempted to escape. See Exhibit CC. and Plaintiff's Aff. at 14.

62. Admitted it was noted.

63. Admitted.

64. Admitted.

65. Admitted this was logged.

66. Admitted, but denied he crawled up into ceiling.

67. Admitted plaintiff popped handcuffs, denied it was ever considered an escape attempt.

68. Admitted plaintiff was calm, cooperative and he did not speak at this time.

69. Admitted.

70. Admitted.

71. Admitted that plaintiff continued to complain of severe back pain due to his back injury went untreated.

72. Admitted.

73. Denied. See Exhibit BB.

74. Admitted plaintiff became justifiably upset due to the continued denial of medical care.

75. Denied. See Exhibit MM.

76. Admitted that Nurse Clark is a [Criminal] defendant in Civil action No. 3:98 cv 2344 (JCH)(HBF) - See Exhibits E and I. Who denied plaintiff adequate medical care.

77. Admitted that Nurse Clark is a defendant in prior Civil action No. 3:98 cv 2344 (JCH)(HBF) - Who denied plaintiff adequate medical care and failed to take any resonable action abate injury to plaintiff. See Exhibits E and I.

61

78. Denied. See Exhibits E-I, and Plaintiff's Aff. at 3.

79. Denied. See Exhibits D, E-I.

80. Admitted that medical staff "noted" it; denied that the assessment was meaningful or competent.

81. Admitted that "plaintiff complained"; denied response was meaningful or competent.

82. Admitted that he was "assessed by medical staff"; denied that the assessment was meaningful or competent.

83. Denied. It's not clear what "physical incident" or "refusing an order" means and no such dated incident is found?

84. Admitted that "the transfer summary" was completed; denied that any assessment was meaningful or competent; furthermore no medical staff including the defendants saw plaintiff prior to clearing him for "transfer" constituting deliberate indifference. Id.

85. Admitted that: "Nurse Kindness noted" it; denied that the assessment was meaningful or competent.

86. Denied. See Exhibits L (5)(6)(7), M and N.

62

87. Denied. See Amd. Com. at 27-28, Plaintiff's Aff. at 28-29 and Exhibits L (5)(6)(7), M-N.

88. Admitted that it is a Unconstitutional DOC policy to not have medical staff personally see and do a meaningful assessment of inmates being transferred out-of-state.

89. Admitted that: "Nurse Kindness had also done a chart review and transfer summary on 10/12/99"; denied that the review was meaningful or competent.

90. Admitted that: "Nurse Kindness noted" it; denied that the assessment was meaningful or competent.

91. Admitted that: "Nurse Turner noted" it; denied that the assessment was meaningful or competent.

92. Admitted that it was "noted"; denied that the assessments were meaningful or competent.

93. Denied. See Exhibits L (5)(6)(7) and M-N.

94. Admitted that plaintiff was "seen frequently"; denied Constitutionally adequate medical care was executed.

63

-14-

95. Denied. Defendant Wollenhaupt herein this case is not merely a "nurse"; but was the "Medical department supervisor" and accordingly faces supervisory liability. See Amd. Com. at 11.

96. Denied. Id. Defendant Wollenhaupt was the supervisory [responsible] official. See Amd. Com. at 11.

97. Denied. See Plaintiff's Aff. at 27, 28-29 and Exhibit BB.

98. Denied. There is no way to tell who "opined" this, or whether such an examination was actually conducted and, if so, the nature and extent of the examination, or job title or qualifications of person to conduct the examination, or the nature or scope of the alleged examination.

99. Denied. There is no way to tell who may have or not have provided "treatment in "Nevada", or their job title or qualifications, or the nature or scope of any such treatment.

100. Denied. See Plaintiff's Aff. at 27, 28-29 and Exhibit BB.

101. Denied. See Plaintiff's Aff. at 27, 28-29 and Exhibit BB.

64

-15-