102. Denied. Defendant Wollenhaupt was the responsible supervisory official and was on actual and constructive notice. See Amd. Com. at 11., and Exhibits L (5)(6)(7) and M and N.

103. Denied. See Plaintiff's Aff. at 35.

104. Admitted that these "Master Proplem List" complaints were logged; denied every single medical condition was logged or addressed.

105. Denied. See Defs'. Ex. T 643 — Nevada medical stated: "decreased hearing", and "back pain", and see Plaintiff's Aff. at 35.

106. Denied. There is no way to tell who: "his or her" is who conducted the examination, or if it was actually conducted, and if so, the nature and extent of the examination, or job title or qualifications of "his or her", or the nature or scope of the alleged examination.

107. Denied. See Plaintiff's Aff. at 29 and Exhibits L (5)(6)(7) and M-N.

108. Denied. See Defs'. Ex. T 643.

65

-16-

109. Denied. See Plaintiff's Aff. at 30.

110. Denied. See Plaintiff's Aff. at 30.

111. Denied. See Plaintiff's Aff. at 30.

112. Denied. The plaintiff's complaints are not baseless, but are meritorious -- Constituting Unconstitutional horrific abuse. Id.

113. Admitted. Material fact.

114. Admitted. Material fact.

115. Admitted. Material fact.

116. Admitted. Material fact.

117. Admitted. Material fact.

118. Denied. See Exhibit N.

119. Denied. See Exhibit N.

120. Denied. See Exhibit R, S and T.

121. Denied. "Very action" is not clear and it

66

-17-

cannot be understood by anyone what the defendants' mean by "very action".

122. Admitted.

123. Denied. See Exhibit W.

124. Denied. See Exhibit W., and Amd. Com. at 40 through 47.

125. Denied. See Exhibit U, and Plaintiff's entire Aff.

126. Admitted.

127. Admitted.

128. Admitted that with deliberate indifference the defendants' failed to protect the plaintiff.

129. Admitted that "bird seed" is indeed live bullets.

130. Denied. See Exhibit V, and Plaintiff's Aff. at 32.

131. Denied. See Exhibit V., and Plaintiff's Aff. at 32.

132. Denied. See Exhibit V., and Plaintiff's Aff. at 32.

67

-18-

## Disputed Issues Of Material Fact

1. The defendants' have unlawfully, blatantly lied, and condoned this unlawfulness, by alleging "on March 31, 1999, that the plaintiff had no pending litigation against the State" - See Defs'. Mem. and Defs'. Statement Of Undisputed Material Facts at No. 21.    When in fact prior thereto March 31, 1999, the printout from the Pacer Center, Exhibit H, shows that the plaintiff had three (3) active lawsuits against the State.

2. The plaintiff has never been a management problem for the DOC prison officials. The facts and evidence prove, overwhelmingly, that it is the defendants and their fellow employees who have created the numerous incidents through their malicious abuse to plaintiff, retaliation, and notorious gross corruption. Plaintiff's actions thereto were at all times reasonable and justified under the circumstances. Plaintiff's Aff. at 1.

3. The plaintiff's witness inmate Angel Caballero #214362, under oath (See Exhibit OO) states the facts as follows.: He has been "incarcerated within the CT. Department Of Correction for over 10 years. As the attached documents support during

-19-

68

this time he has been a serious safety and security threat to the CT. prison officials and other inmates, but he has never been transferred out-of-state due to being a safety or security threat."
See Exhibit OO, at #3.

Furthermore: "He has personal knowledge that there is in fact a overwhelming number of other inmates who are a serious safety and security threat to the CT. prison officials and inmates due to their assaults on staff and inmates, escape attempts, murder and extreme violence, but they have also not been transferred out-of-state."

    Witness Caballero #214362, has attached to his affidavit (Exhibit OO) the following evidence;

: His DR from 3/7/94 for Contraband (Weapon) – involving him (Caballero) coming "out of the cell with shanks in hand."

: His DR from 4/19/95 for Assault on DOC Employee – involving him (Caballero) "charged towards this LT. punching and kicking at staff..., during the above incident inmate Caballero struck officer Miani in the nose with his fist."

: His DR from 9/13/95 for Assault on DOC Employee - involving him (Caballero) "Struck this officer about the head and bit this officer on the forearm."

: His DR from 1/23/96 for Assault on DOC - involving him (Caballero) "took a overhand punch to the face and nose area of Officer Conloque, cutting his face very badly."

: His DR from 1/23/96 for Assault on DOC - involving him (Caballero), "Officer Bronx was struck by inmate Caballero numerous times in the head, face, and arms."

: His DR from 12/9/98 for Contraband Dangerous Instrument (Shank) - involving him (Caballero) "Stabbed" inmate Witchord #134630 with a "Shank."

: His DR from 12/11/98 for Security Risk - involving him (Caballero) "Stabbed" several times inmate Spurgim #134630, with "a 10" Shank."

70                              -21-

: His DR from 3/17/99 for Assault - involving him (Caballero) "assaulted I/M Diaz #79889", "before dropping to his Knees and grabbing I/M Diaz around his head and neck..., I/M Caballero make Several Slashing motions with his right hand to I/M Diaz's face and neck area".

: His DR from 2/26/02 for Assault - involving him (Caballero) "repeatedly throwing blows and landing them, to the head and face of I/M Geraci."

: His DR from 1/27/03 for Fighting - involving him (Caballero) "engaged in a fight."

: His DR from 9/25/03 for Contraband (Dangerous Instrument) - involving him (Caballero) having "Several weapons", "3 pieces of 1/2 inch wide metal, approx. 8 inches long w/ 2 Razors". See photos of these weapons.

: His criminal charges for Assaults on a employee of the Dept. of Corr. 1st degree. Arrest Warrant's thereto. Criminal charges for the above and the

71

-22-

mittimus showing sentence of 3 years and 3 years. DOC Restrictive Status Report for Caballero, "grabbing Diaz around the head and slashing his neck and face with a razor blade requiring outside medical treatment, 82 stitches to close face and neck wounds."

- He also attached as evidence a letter by Warden Wayne Choinski dated 9/30/03, to [defendant] Levesque. With enclosed high Security package on I/M Caballero; "Based on the very serious nature of his SRGSTM Latin King activity and history, inmate Caballero possesses a very serious threat to the Safety and Security of this facility and to the Department of Correction and we are recommending High Security placement." (An out-of-state transfer was not even recommended for Caballero, a very-very dangerous man who possessed "a very serious threat to the Safety and security of CT.'s facility and to the DOC." emphasis added. Thus — absolutely proving that the defendants' entire defense to this lawsuit of plaintiff Duane Ziemba, "was such a management

7a                                    —23—

management problem he had to be transferred out out state", is a sham. It is also a sham of a defense by the defendants' that plaintiff (a non-violent offender, who never harmed any staff or inmates) posed a "safety or security threat." Unequivocally -- these are genuine issues of material fact which prove, the defendants did not transfer extremely dangerous and security threat inmates like Caballaro and others out-of-state; but they did the plaintiff and it was in sole retaliation as described, Id., because plaintiff never even harmed any staff or inmates, and never posed any security threat. Moreover: Defendants' defense is a complete Sham.).

4. Defendant John Armstrong, as the Commissioner of the DOC established a culture of abuse to inmates and gross corruption within the DOC. Where Unconstitutional conduct was a custom that was acceptable, and even rewarded. See Exhibit A.

5. From August 11, 1998 until January 20, 2000 plaintiff was incarcerated at Northern. The Northern prison officials committed numerous serious Unconstitutional violations

73

-24-

against the plaintiff. See Exhibits E and I.

6. In August 1998, the Northern prison officials maced plaintiff, they beat him (on video), tied him down by his hands and feet to a steel bed frame, and physically tortured him for more than 22 consecutive hours. They deliberately denied him medical care for his injuries, deliberately denied him food, liquids, a mattress, clothing and use of the bathroom, inter alia, the deliberately denied him psychotropic medication that had been ordered by his treating psychiatrist. See Exhibits E and I. And Plaintiff's Aff. at 3.

7. Id. Following the Northern prison officials numerous, serious, unconstitutional violations against plaintiff in August of 1998; the DOC's own Security Division investigators found that the Senior Supervisory Officer, Captain Mangiafico, intentionally used excessive force against the plaintiff by striking him in the face. In addition, 3 guards on the scene lied - failed to truthfully report what took place, and despite plaintiff's complaints of injuries, the medical staff neglected to do a thorough assessment and failed to document the results. See Exhibits E-I.

8. Id Incredibly, despite the Security Division's findings [Exhibit E] concerning Captain Mangiafico

-25-

74

Striking plaintiff in the face and the neglect of the medical staff, despite the totally unjustified length of the restraint, and despite the failure of the remaining staff members to tell the truth about the violent excessive force and plaintiff's injuries, no one was disciplined for using excessive force, no one was disciplined for violating the Department's truthfulness directives, and no one was disciplined for denying the plaintiff needed medical care and for physically torturing him. Defendant Armstrong was responsible for this utter lack of discipline. Shockingly he rejected all of his own investigator's findings. See Exhibit I. Only Captain Mangiafico received discipline of any kind; he was found guilty of "failure to supervise" and was suspended for only five days — described by Armstrong as the "least/lowest level of discipline". See Exhibit E, Security Division Routing Form.

9. Id. Directly due to the plaintiff through other inmates and his mother filed complaints regarding the horrific abuse, he had the State Police go into Northern and take statements from 14 prison officials. See Exhibit B. Which compelled the Doc to also investigate and ultimately Captain Mangiafico being suspended, with disciplinary action, and reassigned out of Northern. See Exhibit B.

25

-26-

10. Id. Because of these facts, the Northern prison officials became extremely hostile towards the plaintiff, any they inflicted non-stop acts of retaliation against him. See Plaintiff's Aff. at 3, 5, 6, 8, 9, and 10 through 30. And referenced Exhibits.

11. Plaintiff's Mother Pamela Ziemba, sent defendant Armstrong a letter dated 9/1/98. Which specifically addressed the retaliation against plaintiff by his subordinates, and in part stated: "My son is being destroyed, please step in, please, you are the only one to stop this travesty." Exhibit C. Armstrong failed to remedy the wrong. Plaintiff's Aff. at 3.

12. September 27, 1998, the Northern prison officials attempted to murder the plaintiff. See Exhibit D.

13. Plaintiff personally sent voluminous letters to defendant Armstrong, regarding him neglecting plaintiff's serious complaints. See Exhibit F.

14. Plaintiff's Mother Pamela Ziemba, due to defendant Armstrong failed to remedy the wrong, went to State Senator Billy Ciotto. See Exhibit G.

15. Id. During this horrific time, plaintiff struggled to

76

-27-

learn the law, and didn't resort to violence like the defendants. See Plaintiff's Aff. at 6.

17. The defendants, et al. knew plaintiff filed several lawsuits against them long before they were even served. See Exhibit H.

18. Each defendant unquestionably knew, long before they transferred plaintiff to Nevada, that his family in his behalf went to the State Police filing complaints against the DOC. See Exhibit B. And filed complaints against defendant Armstrong. And even filed complaints to Senator Ciotto. See Exhibit G. And plaintiff filed voluminous complaints. See Exhibit F.

19. Before plaintiff was even transferred to Nevada, at Northern in 1998 and 1999 the prison officials repeatedly threatened him and terrorized him, by stating: "Because of his filing lawsuits and his complaints Commissioner Armstrong put him on the list, he'll be sorry, that he is being transferred out of state where he'll be killed."
Plaintiff was so terrified he filed a complaint with the State Police and also, put these facts on record in pending lawsuit No. 3:98 cv 2344 (JCH)(HBF). See Exhibit J, and Plaintiff's Aff. at 8.

22                                    -28-

20. On 2/8/99 plaintiff filed two grievances. See Exhibit K.

21. The CT. prison officials gave plaintiff voluminous false, retaliatory and abusive disciplinary reports. And at the well known DOC Kangaroo Court they alway unjustifiably found him guilty. See Exhibits referenced and Plaintiff's Aff. at 10 through 25.

22. On March 9, 1998, DOC officials violently beat plaintiff, embedding boot prints/deed bruising into his back. See Exhibit BB. Since this incident his back/spinalcolume has been seriously, permanently injured and all his attempts to seek adequate med. care has been futile. And the defendants' horrific abuse exacerbated the condition. See Plaintiff's Aff. at 27.

23. Prior to defendants' in Sole retaliation transferring plaintiff to Nevada on 1/20/02, he had submitted numerous medical requests and an emergency grievance dated 1/1/02, seeking med. care. All of which were not timely acted on. See Plaintiff's Aff. at 28, and Exhibit L.

24. No medical staff saw or examined plaintiff before his transfer to Nevada - to determine whether or not he could be med. cleared. See Plaintiff's Aff. at 28, and Exhibit L.

78

-29-

25. January 20, 2000, defendants Davis, Matos and Bosquet utilized excessive force on plaintiff. See Plaintiff's Aff. at 29, and Exhibits M and N.

26. The January 20, 2000, Id. excessive force by defendants Davis, Matos and Bosquet caused serious pain and suffering to plaintiff, and permanent injuries. See Plaintiff's Aff. at 29, and Exhibit M-N.

27. January 20, 2000, defendants Davis, Matos and Bosquet forced plaintiff to stand outside in the bitter cold, in a snow storm, and it resulted in pain and suffering and plaintiff to become sick. See Plaintiff's Aff. at 30.

28. January 20, 2000, defendant Bosquet stated: "Put them cuffs on him tightly, he's a fucking asshole suing us and we are getting rid of him".

29. In Nevada, plaintiff was intentionally denied all of his legal material property. Plaintiff's Aff. at 31, and See Exhibits R, S-T.

30. Defendants' were responsible for plaintiff's legal material property being denied to plaintiff and stolen. See Plaintiff's Aff. at 31, and Exhibits R, S-T.

31. Id. Due to plaintiff's legal material being stolen, civil action No. 3:99 cv 2246 had to be withdrawn, and several other meritorious actions were precluded from filing. See Plaintiff's Aff. at 31.

32. From Nevada plaintiff filed a CT. Grievance on "Inhuman/Life Threatening/Cruel Conditions", dated 12/4/02. In response the defendants' failed to take action to protect the plaintiff. See Exhibit U.

33. On January 9, 2002, plaintiff was shot. See Plaintiff's Aff. at 32, and Exhibit V.

Respectfully Submitted
Duane Ziemba /Duane Ziemba #128963
Garner C.I. 50 Nunnawauk Road
Newtown, CT. 06470

Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 14th day of November 2005:

Lynn D. Witterbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105      By: Duane Ziemba
                             Duane Ziemba

-31-

80