# United States District Court
## District Of Connecticut

FILED

2005 NOV 21 P 2:42

U.S. DISTRICT COURT
BRIDGEPORT.CONN.

| Duane Ziemba | Civil Action No. 3:02 cv 258 (DFM) |
|---|---|
| VS. | |
| Lynn Milling, et al. | November 17, 2005 |

### Plaintiff's Affidavit In Support Of Opposition To Defendants' Motion For Summary Judgment

I, Duane Ziemba, hereby declare under penalty of perjury the following:

1. I have never been a management problem for the Department of Correction prison officials. The facts and evidence prove, overwhelmingly, that it is the defendants and their fellow employees who have created the numerous incidents through their malicious abuse to me, retaliation, and notorious gross corruption. My actions thereto were at all times reasonable and justified under the horrific circumstances.

2. Defendant John Armstrong, in fact, as the Commissioner of the DOC established a culture of

81

abuse and gross corruption within the DOC. Where Unconstitutional conduct was a custom that was completely acceptable, and even rewarded.     Following this lawsuit and the incidents described herein, defendant Armstrong was forced to resign as the DOC Commissioner. Please See Exhibit A.

3. From August 11, 1998 until January 20, 2000, I was incarcerated at Northern. The Northern prison officials committed numerous serious Unconstitutional violations against me.   In August 1998, they maced me and beat me, tied me down by my hands and feet to a steel bed frame and physically tortured me for more than 22 consecutive hours, they deliberately denied me medical care for my injuries, deliberately denied me food and liquids, deliberately denied me a mattress, clothing and use of bathroom, inter alia, deliberately denied me psychotropic medication that had been ordered by my treating psychiatrist.

The Department's own Security Division investigation found that the Senior Supervisory officer, Captain Mangiafico, intentionally used excessive force against me by striking me in the face. In addition, three of the guards on the scene

lied - failed to truthfully report what took place, and that despite my complaints of injuries, the medical staff neglected to do a thorough assessment and failed to document the results. Please See Exhibits E and I.

Incredibly, despite the Security Division's findings (See Exhibit E) concerning Captain Mangiafico striking me in the face and the neglect of the medical staff, despite the totally unjustified length of the restraint, and despite the failure of the remaining staff members to tell the truth about the violent excessive force and my injuries, no one was disciplined for using excessive force, no one was disciplined for violating the Department's truthfulness directives, and no one was disciplined for denying me needed medical care and physically torturing me. Defendant Armstrong, shockingly rejected all of his own investigator's findings. See Exhibit I. Only Captain Mangiafico received discipline of any kind ; he was found guilty of "failure to supervise" and was suspended for five days - described by Armstrong as the "least/lowest level of discipline." See Exhibit E, Security Division Routing Form.

Directly due to I filed complaints regarding the above horrific abuse, through other inmates and my mother, I had the CT. State Police go into

Northern and they took the statements of 14 prison officials. Please see Exhibit B. Which did compel the DOC Security Division to also investigate and ultimately Captain Mangiafico being suspended, with disciplinary action taken against him, and him being reassigned out of Northern.

Due to these facts, the Northern prison officials became extremely hostile towards me, and they inflicted non-stop acts of retaliation.

My Mother, Pamela Ziemba understood the travesty and tried to help me by sending defendant Armstrong a letter dated 9/1/98, which specifically addressed the abuse [Corruption] and in part stated; "My son is being destroyed, please step in, please, you are the only one to stop this travesty." I know for an absolute fact that Armstrong failed to take any action whatsoever to remedy the wrong -- travesty. See Exhibit C.

On September 27, 1998, only 26 days after Pamela Ziemba sending defendant Armstrong her worthy 9/1/98 letter and only 16 days after he (Armstrong) ostentatiously responded via his 9/11/98 letter, See Exhibit C. -- the hostile Northern officials in retaliation maliciously tampered with my food (an attempted murder). They put pieces of

84

razor blades in my food that they gave me.
Note: Northern is CT.'s Supermax — inmates do not
have access to razor blades. As a result of
this sick retaliation, I sustained grave injuries.
See Exhibit D.     And defendant Armstrong
was informed of this additional incident,
but once again all he did was ostentatiously
respond. See Exhibit D.    One year following this
incident I again addressed this "attempted
murder" and facts of no investigation was
conducted.    Please see Exhibit D — my letter to
Armstrong dated 9/1/99.   Moreover; to date
no investigation has ever been conducted, and
no disciplinary action has been taken against
the evildoers.     Which is not really
surprising when considering the facts
of Armstrong is responsible for the killing of
several inmates and his culture of abuse and
corruption has cost CT. multimillions in
damages.

4. I personally sent voluminous letters to defendant
Armstrong, directly regarding him intentionally
neglecting to act on my extremely serious
complaints, and on the facts of his security
Division investigators totally refused to even talk
to me pertaining to the DOC unlawfulness. Please

See Exhibit F.

5. Id. I did nothing to deserve it and it is Constitutionally unacceptable — I have been subjected to the most grotesque, malicious and pervasive retaliation and abuse that one can imagine. Defendant Armstrong as the Commissioner, as the highest ranking authority within the DOC, not only did he fail utterly, uniformly and repeatedly to remedy the wrong -- but he personally established the culture of abuse and gross unlawful corruption where Unconstitutional conduct was completely - knowingly - acceptable. Therefore, my mother Pamela Ziemba, had a meeting with State Senator Billy Ciotto regarding these Constitutionally unacceptable violations. Please see Exhibit G, letter by Senator Ciotto to Armstrong dated 12/29/98.

6. During this horrific time, I struggled to learn the law, and I did not resort to violence as the defendants and their fellow staff did to me. I filed 1983 civil right actions as follows: Ziemba v. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF) - filed on 12/2/98; Ziemba v. Wezner, et al. No. 3:98 cv 02370 (DFM) - filed

86

On 12/7/98 ; Ziemba V. Turner, et al. No. 3:99 cv 00306 (AHN) - filed on 2/19/99 ; and Ziemba V. Myers, et al. No. 3:99 cv 02246 (AWT) - filed on 11/17/99. Through the discovery of these cases I received a letter by Office Of The Attorney General, by Antoria D. Howard - to defendant Levesque dated 12/2/99. Which Specifically informed him that I "filed a lawsuit against the DOC". See Exhibit H.  In addition ; I received three "Page Redacted - Attorney Client Privilege" documents.  These "Redacted" documents are the Same type of "Office Of The Attorney General" letters of notice to the defendants, Specifically informing them of how I filed the above lawsuits.  Indeed these are material facts that substantiate the defendants did in fact Know that I filed the above four (4) lawsuits "against the DOC" before any of the defendants were even Served, and before I was transferred, in retaliation, to Nevada.  See Exhibit H.

7. Each one of the defendants named herein this lawsuit Unquestionably Knew, long before they transferred me to Nevada, that my family in my behalf went to the State Police and filed complaints against the DOC (See Exhibit B), and

filed complaints to the Commissioner — defendant Armstrong (See Exhibit C), and even filed complaints to State Senator Billy Ciotto (See Exhibit G). And they knew that I filed complaints also against the DOC and them and how I indeed commenced litigation. Id. Furthermore, I was housed at Northern when I drafted, had copied, and mailed out the above four (4) lawsuits. Id. Northern is CT.'s Supermax, Segregation. According to Northern (DOC) policy I had to give these four (4) lawsuit complaints to the DOC Administration for copying prior to them even being filed to the Court. The DOC Administration kept these lawsuit complaints up to two (2) weeks before providing me the needed photocopies. They had these lawsuits in their possession for several weeks, prior to my even filing them with the Court. Clearly the defendants knew I was suing them and their fellow staff — — long before these lawsuits were even officially filed, and long before they were even served with them, and long before I was transferred to Nevada in sole retaliation. Exhibit H.

8. At Northern in 1998 and 1999 the prison officials repeatedly threatened me and terrorized me.

88

-8-

By their stating that "because of me filing lawsuits and my complaints Commissioner Armstrong put me on the list, I'll be sorry, that I am being transferred out of State where I'll be killed." I was so terrified I filed a complaint with the State Police regarding these unlawful threats. In addition, I put these very same facts on record in lawsuit: 3:98 cv 2344 (JCH)(HBF). See Exhibit J, Interrogatories by me dated 11/12/99 Served on defendant Armstrong, at No. 1.

9. On 2/8/99 I filed two (2) Grievances IGP No. 141-99-086 and 141-99-087. Involving: "Armstrong has stated incidents will be fully investigated, evidence supports these investigations have been intentionally hindered and not adequate". And; "Commissioner Armstrong has ordered Dennis Coyle and his office to fully investigate numerous incidents. Dennis Coyle has neglected to answer all requests and all correspondence and failed to have someone address the serious issues." See Exhibit K, both Grievances were date stamped 2/10/99 and given IGP No.'s, but the defendants failed and refused to act on them, respond to them, or to remedy the wrong.

89

## Material Facts Of My Disciplinary History And Material Facts In Dispute

10. The Connecticut prison officials gave me voluminous false, retaliatory and abusive disciplinary reports (DR here after). And at the well known DOC Kangaroo Court they always unjustifiably found me guilty of said charges.

11. Exhibit Z. June 26, 1996 DR charge for Contraband. I had six cigarettes.

12. Exhibit AA. September 9-12, 1997 DR's for Fighting, Interfering with Safety or Security. Involve and pertain to pending civil action No. 3:98 cv 2370 (DFM) – at Cheshire the defendants (in this separate action) failed to protect me resulting in me being stabbed, denied me needed medical care, inter alia, utilized excessive force.

13. Exhibit BB. March 9, 1998 DR's for Threats, Flagrant Disobedience and Causing A Disruption. Involve and pertain to pending civil action No. 3:00 cv 391 (JCH)(HBF) – violent beating in a sallyport, sustained permanent injuries that placed me in a hospital bed for a week.

90

14. Exhibit CC. July 18, 1998 D.R. for Disobeying a Direct Order. Involves pending civil action No. 3:00 cv 391 (JCH)(HBF) — in "DOC Damage Control" they attempted to deny me all access to the outside world. I had no loss of phone sanction, but they targeted me and denied me use of phone, while hundreds of other inmates were freely allowed to use the phones. When I tried to exercise my right to utilize the telephone they slammed me with this D.R. and threw me into Segregation. Therein and due to I suffered from severe mental illness (PTSD), due to horrific abuse, due to being totally denied mental health care/medication, I admit I lost endurance and I broke a toilet, window of cell, restraints and ripped a small sheetrock ceiling down. In return they continued the truly horrific, criminal, abuse. They lied claiming my destroying the ceiling was "attempted ascape", so they could and did transfer me to Northern - Supermax.    It speaks volumes that during these incidents I may have destroyed state property, but never did I assault or attempt to - - anyone.   They gave me numerous D.R's involving the above, which I don't have copies of.

15. Exhibit DD. August 12, 1998 D.R Destruction of Property. Involve and pertain to pending civil action No. 3:98 cv 2344 (JCH)(HBF) - Id. See foregoing at 3.

91                                       —11—

16. Exhibit EE. September 29, 1998 DR for Disobeying a Direct Order. This is an incredibly false charge involving, Id., the Northern prison officials tampering with my food - attempted murder on 9/27/98. Id I was seriously injured, deliberately denied medical care and left alone locked in the supermax cell to bleed to death. On 29th they gave me this DR falsely alleging I refused to get ready for Court - I never refused but asked to see a Lt. (Supervisor) due to clearly I was in need of medical care. See Exhibit EE.

Also Exhibit EE., is DR from same day of "Attempted Assault on DOC Employee". In "DOC Damage Control", to attempt to cover up their attempted murder of me, they intentionally took me to the wrong Court to hide me - the damage. Around lunch time it was ordered that I be taken to right Court (GA-9 Middletown), at which time they entered cell and attacked me and they yelled I was refusing to leave cell. I did not, ever, attempt to assault them. And the intentional wrong court they took me to was Hartford, where I have never had any form of case in.

17. Exhibit FF. October 30, 1998 DR for Disobeying Direct Order. The overt retaliation continued, the Northern prison officials, again, tampered with my

92.

food. Incredibly when I held the evidence they gave me this DR.

18. Exhibit GG. October 31, 1998 DR for Disobeying A Direct Order. The blatant retaliation continued. They tampered with my food again. And incredibly when I held the evidence they gave me this DR.

19. Exhibit HH. November 11, 1998 DR for Interfering With Safety And Security. Guard Smith stole my reading glasses, pen and 3 folders of my legal material (So I could not see to do litigation, and so I had no pen to write litigation with). When I (as anyone would do) pushed the cell intercom to address this incident, in return and further retaliation they gave me this DR.

20. Exhibit II. March 4, 1999 DR's for Interfering With Safety Or Security, Self Mutilation and Interfering With Safety Or Security. Involve and pertain to the extremely serious Unconstitutional violations in pending civil action No. 3:01 cv 2166 (JCH) — Where the defendants have recently lost summary judgment (emphasis added) and this case is scheduled for trial January 11, 2006.

93                                    −13−

21. Exhibit JJ. March 6, 1999 DR for Disobeying A Direct Order. This DR also involves the above civil action No. 3:01 cv 2166 (JCH). Id.

22. Exhibit KK. June 19, 1999 DR for Contraband. Is frivolous because inmates are allowed to have "Tylenol", "Cups", "a Banana" and "Cleaner". Further, DR is by guard Jackson who has a Substantiated history of Unlawfulness and retaliatory acts against me.

23. Exhibit LL. September 15, 1999 DR for Disobeying A Direct Order. Guard Jackson tampered with my food and incredibly when I held the evidence he gave me this DR. Also Exhibit LL DR for Attempted Assault On A DOC Employee, very next day guard Jackson through the cell door food trap tried to break my wrist. Then he gave me this false charge to cover it up. Also Exhibit LL DR for Interfering With Safety Or Security. Id. Guard Jackson tried to break my wrist, then this guard and Captain Fanfeuff worked together to maliciously put me into InCell Restraints so they could steal my legal material. My ℞ food was crippled, therefore the restraints Knowingly put my safety in danger. I fell, then guard Jackson, et al. intentionally failed to help me. In return I

94

admit to taking the Non-Violent action of
flooding the tier and covering the cell window
seeking help. In response they continued to
deny me medical care, and without legal
justification they four pointed me in torturous
retaliation. Also Exhibit LL DR for Attempted
Assault On A DOC Employee. Captain Fareuff lied
by alleging I spit at him. Videotape recording of
incident proves I did not spit at this man.

24. Exhibit MM. October 6, 1999 DR for Interfering
With Safety or Security. On this day the Northern
prison officials stole my legal paperwork. This is,
in fact, the DOC's custom and culture to steal,
destroy, legal material of **litigants**' who are brave
enough to sue DOC officials for their corruption.
In response to this on-going unlawfulness I
flooded the cell and tier to protest.

25. Exhibit NN. December 13, 2003 DR for Assault On
DOC Employee. This DR is well after the subject
matter and time frames of the claims stated herein
this Complaint — — however I have included it due
to it is the ONLY alleged "Assault" on my DOC
record. These facts are important to this
case because they prove how I have never been
a management problem or a safety or security

95

threat to the DOC. Please see this sole "Assault" charge (Exhibit NN). It alleges only, that I "squeezed guards hand", and my "nails dug into outside of (guards) hand creating a superficail gash."        On the face of the defense of this DR I stated the true facts of this incident; "Due to my wrist being bent and twisted I may have accidently grabbed one of the officers hands and scratched them, however there was no intent for me to assault or hurt anyone, I'm a nonviolent offender and have never assaulted anyone." (emphasis added).

Indeed, it is the DOC officials who have, in absolute fact, violently assaulted and beat me -- inflicting permanent injuries to me.


26. In response to the Defendants', and their fellow employees' horrific abuse to me, I respectfully turned towards the law and not violence, unlike these correctional employees. And herein the United States of America, my exercising my right of access to the Courts should be respected — upheld ... Not perniciously retaliated against. Nor should the fact of I as pro se have filed and litigated several cases create an extreme prejudice against me by

this honorable Court -- as Counsel for the defendants has deviously urged this Court to do so.

See Exhibit BB 27. On March 9, 1998 the DOC prison officials violently beat me inside a Sallyport. They embedded boot prints and deep bruising into my back, inter alia. Exhibit BB. Please See Civil Action No. 3:00 cv 391 (HBA) (JCH). See Exhibit BB. As a result they placed me in a hospital bed for a week.      And Since this incident my back and spinalcolume has been seriously, permanently injured. I have attempted to seek humane, proper and adequate medical care for my damaged back since this incident, but its been deliberately denied. Further, the defendants named in this lawsuit - horrific abuse to me exacerbated this condition.

28. Prior to the defendants, in sole retaliation, (1/29/02) transferring me to Nevada,   I submitted numerous medical requests directly to defendant Wollenhaupt. And also, I filed an emergency grievance on January 1, 2000 - IGP No. 141-00-019. Requesting medical care for my seriously injured back.   See Exhibit L, the emergency grievance.      Despite my numerous requests filed, and despite this emergency grievance filed, no medical staff even saw me prior to my transfer to Nevada.   And no one

Whatsoever examined me or provided me any form of medical care for my seriously injured back.

29. January 20, 2000 at Northern, I was being prepared for transfer to Nevada. Defendants Davis, Matos and Bosquet each were personally responsible for placing the restraints on me excessively too tight. Defendant Matos put the belly chains on me and when he started to place the handcuffs on my wrists, defendants Davis and Bosquet assisted. At this time defendant Bosquet stated the following: "Put them cuffs on him tightly, he's a fucking asshole suing us and we are getting rid of him." Thereon they each intentionally placed the handcuffs and belly chain on me excessively too tightly. They each totally ignored my pleas for them to call medical staff due to my back was seriously injured. These three (3) defendants put me in a van, and all the way up to New York I continued to plead with them for them to please loosen the excessively too tight restraints, but they refused to do so. The bellychains cut into my spin causing truly excruciating pain. And the handcuffs cut the circulation off, causing gross swelling and my wrists and hands to become numb. Ever since this incident my right wrist

and hand locks up, it is cold all of the time and I lost feeling there in my hand.

I have, repeatedly, addressed this to medical staff in Nevada and in CT. and they told me the following: "There's nothing they can do."

I had two (2) affidavits by Northern inmates, who witnessed this intentional, malicious, retaliatory excessive force, and denial of medical care by these defendants by their failure to summon medical staff. These two (2) affidavits were stolen in September and November 2004 by DOC officials. Id.

30. **Id.** In New York at the airport, defendants Davis, Matos and Bosquet forced me out of the van, made me stand in the bitter cold, in a snow storm, for several hours. I only had a short sleve jumpsuit on and underclothing. During this incident defendant Bosquet threatened my by stating: "If I didn't stand there (outside), or moved, I'll be shot dead." In the Fed. Oklahoma holdover whereat I was for two (2) weeks I became very sick with the flu and a cold blocking up my sinuses. A doctor saw me and prescribed me medication. Due to the cold and my sinuses being blocked up, when

99

I was back on the airplane, my ear drums blew and popped painfully.

31. Defendant Armstrong was on actual and constructive notice of the horrific, grotesque, malicious and pervasive retaliation by his subordinates against me. Id. But he failed to take any action whatsoever to remedy the wrong. Id. In further retaliation against me, on 1/20/00 when I was transferred to Nevada, his subordinates whom he is responsible for kept all of my legal material property in their possession refusing to transfer it with me.

With justification I was paranoid about the safety of my essential and important legal material. Therefore from Nevada I immediately wrote and sent voluminous letters (aleast 20 to 25) to the responsible supervisory officials defendants Armstrong, Milling and Myers. I number one; informed these defendants that I need my five (5) boxes of legal material immediately; and number two, I placed each one of these defendants on actual and constructive notice, that they better take action to ensure that their agents do not steal, destroy or intentionally lose my legal property. I know for an absolute fact that these

-20-

100

three defendants deliberately did not take any action to ensure the above.

I do not have copies of the voluminous letters I sent to Amstrong, Milling and Myers because they were recently stolen in September and November 2004 when the defendants' minions stole my legal material and violently broke my ® wrist.

These three defendants were each personally involved, because they failed to remedy the Constitutional violation of their subordinates denying me my legal material. And, after the overt, malicious and pervasive retaliation (which was even substantiated by their very own Security Division investigators, Id.) they failed to remedy the wrong of the Unconstitutional retaliation, and lastly they failed to protect my legal property.

Specifically they denied me all of my legal material from 1/20/00 until 4/5/00. In Nevada when I finally received it, I immediately discoved that a high volume of my essential legal material had been stolen. Due to these facts, from Nevada I was legally forced to withdraw Civil action No. 3:99 cv 2246. Also, I did have several meritorious §1983

101                          -21-

actions drafted and prepared for filing which were apart of the legal material Stolen. I cannot now, ever file thes cases because I do not recall the named defendants, specific dates of violations and facts thereto.

32. In Nevada, on January 9, 2002, I was an innocent bystander shot by the gun happy guards. I was shot with a shotgun in the back of my head, my back and in my side. I did have a complete set of the Incident Reports to this shooting, and the medical records. But these too were stolen in September and November 2004. Id.

33. I know that, even as a layman, x-rays do not always show when there is a significant back injury.

34. I did not ever tell any medical staff my back injury is comfortable after taking motrin.

35. In Oklahoma, the Federal holdover, in Nevada and also when I was returned to CT., I was seen by Doctors for my seriously injured (R) wrist, and spinalcolumn. Repeatedly the Doctors told me "to rest", "do not lift anything", and "there is really nothing they can do to help me."

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed : Duane Ziemba
Duane Ziemba # 128963

Dated : November 14, 2005

Respectfully Submitted
Duane Ziemba / Duane Ziemba # 128963
Garner C.I. 50 Nunnawauk Road
Newtown, CT. 06470

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 14th day of November 2005 :

Lynn D. Whittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

By : Duane Ziemba
Duane Ziemba

103                        -23-